**\*\*NOT FOR PUBLICATION\*\***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MILTON C. V.-L., | Civil Action No. 20-6076 (CCC) |
| Petitioner, | **OPINION** |
| v. | |
| WILLIAM BARR, et al., | |
| Respondents. | |

**CECCHI, District Judge**.

Presently before the Court is Petitioner Milton C. V.-L.'s ("Petitioner") petition for a writ of habeas corpus. ECF No. 1. Following an order to answer, the Government filed a response to the petition. ECF No. 4.[1] Petitioner did not file a reply. For the following reasons, Petitioner's habeas petition is denied without prejudice.

**I. BACKGROUND**

Petitioner is a forty-three-year-old native and citizen of Ecuador who illegally entered the United States in 1999, and has remained in this country since that time. ECF No. 1 at 2. In January 2020, Petitioner was taken into immigration custody pursuant to 8 U.S.C. § 1226(a) based on his illegal entry into the United States and placed in removal proceedings. Id.; ECF No. 4-6 at 1. On

---

[1] In its response, the Government states that, "[t]hough no motion for preliminary relief has been filed, Respondent construes the demand for immediate release as a motion for a preliminary injunction." ECF No. 4 at 5. As the Court is ruling on the petition for a writ of habeas corpus, to the extent there is an accompanying implicit request for injunctive relief, that request is denied as moot. *See Nohasses G. C. v. Decker*, No. 20-4653, 2020 WL 2507775, at \*12 (D.N.J. May 15, 2020) ("Because the underlying Petition is denied, the accompanying Motion for an order to show cause with temporary restraints is DENIED as moot.").

April 3, 2020, Petitioner requested and received a bond hearing before an immigration judge, but the judge denied release on bond because the judge found Petitioner to be a flight risk. ECF No. 4-7.  On May 4, Petitioner requested and received a bond redetermination hearing, but was again denied bond as the immigration judge found "no material change in circumstances" sufficient to meet Petitioner's burden of showing he was not a flight risk. ECF No. 4-8.  Petitioner thus remains detained pursuant to Section 1226(a) at this time in the Elizabeth Contract Detention Facility (the "Facility").

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2241(c), habeas relief may be extended to a prisoner only when he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).  A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989).  As Petitioner is currently detained within this Court's jurisdiction, by a custodian within the Court's jurisdiction, and asserts that his continued detention violates due process, this Court has jurisdiction over his claims. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 494–95, 500 (1973); *see also Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).

### B. Analysis

In his habeas petition, Petitioner raises three claims for relief:  a claim in which he vaguely alleges that his continued detention is not "authorized" by 8 U.S.C. § 1226(a), and two claims in which he asserts that his continued detention in light of his potential exposure to COVID-19 either amounts to unconstitutional punishment under the Due Process Clause or violates his rights

insomuch as his continued detention amounts to the Government being deliberately indifferent to his medical needs. Turning first to Petitioner's challenge to his continued detention under Section 1226(a), Petitioner has received the process which is due and this Court is without authority to second-guess the finding of the immigration judge that Petitioner was a flight risk.

Under Section 1226(a), the Government is authorized to detain an alien placed in removal proceedings or release the alien on bond or parole. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 838 (2018). In those cases in which the Government chooses to detain an alien, the alien is free to request a bond hearing before an immigration judge. *See, e.g., Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 278–79 (3d Cir. 2018). At a bond hearing pursuant to the statute, the "burden [of proving that the alien is neither a flight risk nor danger to the community and is entitled to release] remains on the detainee at all times." *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 276, 279 (3d Cir. 2018). Although a detained alien may also request a bond redetermination hearing following a denial of bond, the burden remains on him to prove a change in circumstances and that he is neither a flight risk nor danger. *Id.*; 8 C.F.R. § 1003.19. Once an immigration judge has rendered a decision on the merits of an alien's request for release on bond, "[n]o court may set aside [the immigration judge's decision] regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." 8 U.S.C. § 1226(e).

In this case, Petitioner had both a bond hearing and a bond redetermination hearing, wherein an immigration judge found Petitioner to be a flight risk at the bond hearing and that he failed to show any change in circumstances at the redetermination hearing, and thus the immigration judge in both instances found that release on bond was inappropriate. As Petitioner has failed to show in any way that he was denied due process at his bond hearings before the immigration judge, and as this Court thus lacks jurisdiction to review the merits of the immigration

judge's refusal to grant bond, Petitioner's claim that he is being detained in violation of the applicable detention statute fails to set forth a valid basis for habeas relief. *Borbot*, 906 F.3d at 279.

In his remaining two claims, Petitioner contends that his being subject to immigration detention during the COVID-19 pandemic is either unconstitutional punishment without a supporting conviction or deliberate indifference to his medical needs. Petitioner does not identify any specific medical conditions he suffers from, but rather argues that he is in danger of being exposed to COVID-19. ECF No. 1 at 5; *see also* ECF No. 4 at 1 ("Petitioner also fails to identify any underlying medical conditions or other factors that put him at an increased risk of severe illness from COVID-19.").

The Third Circuit recently reiterated the standards applicable to such claims in its decision in *Hope v. Warden York County Prison*, 972 F.3d 310 (3d Cir. 2020). As the Third Circuit explained, in evaluating whether an alien's conditions of confinement amount to undue punishment, "[t]he touchstone for the constitutionality of detention is whether conditions of confinement are meant to punish." *Id.* at 325–27. In the absence of a showing that the detention facility's staff acted with an express intent to punish the petitioner, determining whether conditions amount to unconstitutional punishment requires that the district court "consider the totality of the circumstances of confinement, including any genuine privations or hardship over an extended period of time, and whether conditions are (1) rationally related to their legitimate purpose or (2) excessive in relation to that purpose." *Id.* In reviewing the conditions and actions of detention officials and their relation to the Government's legitimate interest in detaining aliens pending the conclusion of removal proceedings, reviewing courts "must acknowledge that practical considerations of detention justify limitations on many privileges and rights," and "ordinarily

defer" to the expertise of prison officials in responding to COVID-19 unless there is "substantial evidence in the record that the officials have exaggerated their response" to the situation. *Id.* Given the Government's strong interest in detaining aliens subject to removal proceedings and the deference due to the expertise of detention officials, the Third Circuit in *Hope* rejected the argument that detention during the COVID-19 pandemic would amount to unconstitutional punishment where the Government had taken concrete steps aimed at mitigating the threat posed to detainees, notwithstanding pre-existing health conditions which may predispose those detainees to complications should they contract the virus. *Id.* at 327–29.

Turning to deliberate indifference medical claims, the Third Circuit reaffirmed that "[t]o establish deliberate indifference, [the petitioner] must show the Government knew of and disregarded an excessive risk to [his] health and safety." *Id.* at 329 (citing *Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000). The Court of Appeals further held that "[t]he context of the Government's conduct is essential to determine whether it shows the requisite deliberate indifference," and that, in evaluating this context, a reviewing court must defer to the expertise of both medical officials and jail administrators and not assume a constitutional defect where concrete action has been taken in response to the COVID-19 pandemic as "rules of due process are not subject to mechanical application in unfamiliar territory." *Id.* at 329–30 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998)). Thus, where the Government has taken concrete steps towards ameliorating the medical effects of COVID-19 on a detention facility, a detainee will fall "well short of establishing that the Government was deliberately indifferent toward [his] medical needs" in light of the virus even though the Government cannot entirely "eliminate all risk" of contracting COVID, notwithstanding even serious pre-existing medical conditions which may exacerbate a COVID-19 infection should one occur. *Id.* at 330–31.

In this matter, the Government has a legitimate interest in detaining Petitioner, and to prevail on his punitive conditions claim, Petitioner must show either that the Facility and its staff acted with an express intent to punish him or that his conditions of confinement are arbitrary, purposeless, or excessive and therefore unreasonable in light of that interest. *Hope*, 972 F.3d at 325–29; *see also Stevenson v. Carroll*, 495 F.3d 62, 67–68 (3d Cir. 2007); *Daniel R.-S. v. Anderson*, No. 20-3175, 2020 WL 2301445, at *5–7 (D.N.J. May 8, 2020). As Petitioner has not alleged an express intent to punish him on the part of Respondents, he must present facts indicating that his current conditions are arbitrary, purposeless or excessive in light of that clear interest in his detention.

Having reviewed the actions taken by the Facility to mitigate and alleviate the threat posed to its detainees by COVID-19, the Court finds that Petitioner has failed to show that his conditions of confinement are arbitrary, purposeless, excessive, or unreasonable. In reaching this conclusion, the Court specifically notes that the Facility has taken significant, concrete steps to curb the threat of the virus which are in excess of those which the Third Circuit found sufficient to prevent a showing of likelihood of success on the merits of a conditions of confinement claim in *Hope*. *See Hope*, 972 F.3d at 325–29. These protective actions on the part of the Facility include the following: operating significantly under capacity to increase social distancing capabilities; conducting intake medical screenings for all incoming detainees which evaluate the likelihood an incoming detainee may have been exposed to COVID-19; the quarantining and treatment, including hospitalization where appropriate, of infected individuals; the separate detention, cohorting, and observation for fourteen days of individuals who have been exposed to those with COVID-19 but show no symptoms; daily twenty-four hour sick call access; on-site and on-call medical staff at all times; the provision of masks and protective equipment to staff and detainees;

increased cleaning, sanitization, and soap access for detainees; limiting entrance into the facility including by making all lawyer visits non-contact and requiring temperature screenings of all entering the facility; and providing ample space to permit proper social distancing. *See* ECF No. 4-5. In light of these steps, it is clear that Petitioner's current conditions of confinement are rationally related to the Government's interest in detaining Petitioner, and thus pass constitutional muster. *Hope*, 972 F.3d at 325–29

Petitioner has likewise failed to show that the Facility has acted with deliberate indifference to his medical needs given the concrete, significant steps taken by the Facility to mitigate the medical threat of COVID-19. Although this Court accepts that the COVID-19 pandemic does pose a threat to detainees, Petitioner has failed to show that he is at significantly greater risk than other detainees, and nothing Petitioner has submitted indicates that the Facility and its staff have been deliberately indifferent to any specific medical needs Petitioner has presented to its staff. Instead, the record indicates that the Facility has made great strides towards alleviating the threat of COVID-19, significantly greater than those present in *Hope*, which left the petitioners there "well short of establishing that the Government was deliberately indifferent toward [his] medical needs" even in light of their severe pre-existing conditions. *Id.* at 330–31. Petitioner has thus failed to show an entitlement to habeas relief, and his habeas petition is denied.

### III. CONCLUSION

For the reasons expressed above, Petitioner's habeas petition (ECF No. 1) is **DENIED WITHOUT PREJUDICE**. An appropriate order follows.

**DATE:** November 13, 2020

**CLAIRE C. CECCHI, U.S.D.J.**